## GONINAN VS. STEPHENSON AND WIFE.

*Equity — Fraudulent representations or concealment.*

Proof that when a mortgage of a third party was assigned to the vendor of land by the purchaser, in payment of part of the purchase price, the purchaser represented the mortgage as ample security, and *concealed* the fact that there was another mortgage of the same date on the same premises, which, by agreement between the two mortgagees, was a prior lien, *held* not sufficient to show *fraud*, entitling the vendor to return the mortgage and note secured thereby, and claim a vendor's lien for the amount (after the prior mortgage had been foreclosed and the premises sold for the amount thereof); there being evidence that such mortgaged premises were in fact worth at the time the full amount of both mortgages, and it appearing that the purchaser had taken the second mortgage as an adequate security for a debt of the same amount due him from the mortgagor, had indorsed the mortgage note to his vendor, and had subsequently offered to reconvey the land purchased by him, to his vendor, for what he had paid therefor and the value of his improvements.

APPEAL from the Circuit Court for *La Fayette* County.

In June, 1865, *Stephenson*, the defendant, sold to one Faucett certain land in said county, for which Faucett executed two notes of $300 each, payable in one and two years respectively to one Metcalf, and secured by a mortgage on said land (defendant being indebted to Metcalf at the time in the sum of $600); and also executed a note for $400, payable in one year to defendant himself, or his order, and secured by a mortgage to him. These instruments were all executed on the same day, but, by agreement between defendant and Metcalf, the mortgage to the latter was to be the prior lien. In September, 1865, defendant bought of plaintiff certain other land in said county, at an agreed price of $1,800, paid $100 down, gave his own notes at one, two and three years for the aggregate amount of $1,300 (secured by mortgage on the premises), and indorsed and assigned to plaintiff his

$400 note and mortgage from Faucett. He did not at that time inform plaintiff of the existence and prior lien of the mortgage from Faucett to Metcalf. When said $400 note fell due, plaintiff took no steps to charge defendant as indorser. Afterward the Metcalf mortgage was foreclosed, defendant being made a party to the action, and his lien adjudged to be subordinate to that of said mortgage ; and the land was sold for the amount of the judgment in that action. Thereupon plaintiff, by the present action, sought to establish a lien as vendor upon the land sold by him to defendant, on the ground that defendant, at the time of such sale, fraudulently represented to him that said mortgage was the first and only mortgage lien upon the premises, and fraudulently concealed the existence of said $600 mortgage to Metcalf, and the agreement by which it became the prior lien, which representation and concealment induced the plaintiff to accept said $400 note and mortgage as part payment for the land sold to defendant. The answer denied the allegations of fraud.

On the trial, plaintiff testified : "When *Stephenson* and I talked of trading, he asked me to take the Faucett note and mortgage, and said to me that it was well secured, and that there was property enough mortgaged to pay the debt. I replied, ' Yes, one thousand dollars ought to pay four hundred dollars.' I relied upon the mortgage wholly for my security. * * I did not know of any other incumbrance upon the property until the time the mortgage became due, when Mr. Metcalf came to my place of residence and told me of his mortgage. The property covered by the mortgage was at no time worth more than $700. * * I had no acquaintance with Faucett at the time I took the mortgage and note, and did not rely upon his ability to pay them, but relied wholly on the mortgage, supposing it to be the only one on the land." On cross-examination he said : "I told *Stephenson* I would have nothing to do with notes which

he wished me to take, unless they were secured by mortgage. I did not say to him that I knew Faucett, and thought he would pay. I did not, at that time, know Faucett. * * When the mortgage became due, Faucett said if Metcalf and I would take his store at $1,000, he would pay the interest on the claims due at that time, which we declined to do." Defendant, as a witness for himself, testified: "Plaintiff was very anxious to sell me his farm, with the crops. I finally made him the offer of $1,800. I did not think he would take me up, but he did. I then told him I could not make the payments unless he could take notes and mortgages I had against other people; and I spoke about the Faucett note and mortgage for $400. Plaintiff said he knew Faucett, and he was a good man. I believed so myself, and thought at the time that his circumstances were good. I asked the plaintiff about the crops, and he thought them worth $400. I had agreed with Faucett, if he wished to pay the mortgage before due, he might do so, and save interest. The plaintiff said he understood that, and would do the same with Faucett. Faucett had told me he was expecting $350 from his brother in England. When his mortgage came due, plaintiff came to me about the Metcalf mortgage. I asked him if he did not know about that before. He said he did not. I asked him if he did not know about Faucett's affairs and circumstances. He said he did. I told him if he would pay me for the improvements I had made I would let him have the farm back. He said he had traded with Faucett, who was engaged in merchandising at Jenkinsville [in La Fayette county], before he (plaintiff) removed to Iowa county [in the fall of 1865]. I would not have taken less than the face of the Faucett mortgage for it, at the time I assigned it to the plaintiff. * * I sold goods to Faucett at the time I sold him the land — $375 worth; and he paid me. His credit, I think, was good in Galena. About the time the Faucett note

became due, plaintiff came to me, and wanted me to take it back and pay him the money. I replied, that I would like to have him take the farm back and pay me for my improvements. I have paid all the amounts due on the mortgage I executed to the plaintiff, except the last payment due." On cross-examination, defendant said: "After plaintiff first told me about the Metcalf mortgage, he came to see me again, and said he had been to Darlington [the county seat], and had had the records examined, and could not find any record of the Metcalf mortgage, and he was feeling well about it. Faucett is now insolvent." A witness, called for defendant, testified, that he knew the property covered by the mortgages to defendant and Metcalf, and thought that, in 1865, it was worth $1,000; that, so far as he knew, Faucett's credit was good at that time, but his (witness's) acquaintance with him was very limited.

To rebut defendant's testimony, plaintiff testified: "I knew nothing of Faucett, or his affairs or circumstances, when I took the mortgage against him; was never in his place of business, and never traded with him. I relied wholly upon the mortgage for my security, and defendant's representations that there was property enough to pay the debt. I should not have taken it had I known of the Metcalf mortgage. After the mortgage became due, I asked defendant why he did not tell me of the Metcalf mortgage, and told him I should look to him for my money. He said I could have the farm back by paying him for his improvements. I replied that I did not want the place, and asked him, 'What about the crops?' I could not take the place back, for I had bought another."

The court found, *inter alia*, that plaintiff and defendant, at the time of the assignment to plaintiff of said mortgage, "each professed to know the circumstances and responsibility of said Faucett, and believed him entirely good and safe." It also held, that "there was

no fraud on the part of defendant, either in fact or in law," and dismissed the complaint. The plaintiff appealed from the judgment.

*P. A. Orton, Jr.*, for appellant:

The concealment of the existence of the Metcalf mortgage, and of the agreement that it should be a prior lien, was fraudulent. Story's Eq. §§ 207–215; *Allen v. Addington*, 7 Wend. 10; *Kidney v. Stoddard*, 7 Metc. 254; *Brown v. Montgomery*, 20 N. Y. 287; *Barber v. Kilbourn*, 16 Wis. 491; 2 Parsons on Con. 274, note G, and cases there cited. The record of that mortgage did not justify the concealment of its existence. *Mead v. Bunn*, 32 N. Y. 275. The fact that a party has bound himself by contract, is no answer to the charge, that he has been guilty of deceit in the same transaction, by which the other party was actually misled to his injury. *McNaughton v. Conkling*, 9 Wis. 316; *Gallager v. Brunnel*, 6 Cowen, 350.

*Chas. Dunn* and *S. U. Pinney*, for respondents:

The vendor's lien is waived whenever any distinct and independent security is taken, whether by mortgage of other land, or pledge of goods, or personal responsibility of a third person, and also when a security is taken upon the land, either for the whole or a part of the unpaid purchase money, unless there is an express agreement that the implied lien shall be retained. *Gilman v. Brown*, 1 Mason, 192, 214; *Fish v. Howland*, 1 Paige, 20, 30; *Warner v. Van Alstyne*, 3 Paige, 513; *Phillips v. Sanderson*, 1 S. & M. Ch. 462; *Mackreth v. Symmons*, 1 L. C. in Eq. (Am. ed.) 362–366. 2. Defendant's statement that there was property enough to pay the mortgage was merely the expression of an honest opinion as to the value of the mortgaged premises, and cannot be considered as a fraudulent representation, even if he was mistaken. *Hepburn v. Dunlap*, 1 Wheat. 189. A court of equity requires the clearest proof of fraudulent representations, and that the contract was based

upon them, before it will annul such contract. *Haugh v. Richardson*, 3 Story, 659, 690, *et seq.* Defendant did not pretend to plaintiff that the $400 mortgage was the only one on the property, or was the first lien thereon. The maxim *caveat emptor* applies to the transaction, and plaintiff could have ascertained the facts by the public registry. It does not appear that defendant did any thing to mislead him or put him off his guard, or that he believed plaintiff was taking the security on the faith of the statement he made as to there being property enough to pay for it. But the evidence shows, that, when the trade was made, the mortgaged premises were worth enough to pay both claims; that plaintiff knew Faucett's circumstances, and considered him a good and honest man; and that he had defendant's indorsement, the benefit of which he lost only by his own laches.

PAINE, J. The judgment in this case must be affirmed, for the reason that the proof wholly fails to support the charge of fraud in the complaint.

The only fact upon which fraud is predicated, was the omission of the defendant to inform the plaintiff of the existence of the prior mortgage. But there was no misrepresentation, no question asked, and it does not appear that *Stephenson* knew that the plaintiff was ignorant of that fact, and, in consequence of that ignorance, was acting as he would not otherwise have done. On the contrary, the fact that *Stephenson* had taken the second mortgage as a security for his own debt to that amount, that he and another witness swear that the property was worth, at the time, the amount of both mortgages, and that in transferring the second mortgage to the plaintiff he indorsed the note, so as to remain personally liable, if properly charged as indorser, and his subsequent offer to reconvey the property for what he had paid, and pay for his improvements, so effectu-

ally rebut all suspicion of any fraudulent concealment or intent as to leave no ground whatever upon which to sustain the action.

*By the Court.* — The judgment is affirmed, with costs.

